Ruffin, C. J.
 

 The plaintiff’s equity is fully admitted fey the answers, except as-to-the fact, that the bond en
 
 *274
 
 dorsecl to feira is his absolutely. Bennick denies that in his answer and says it was only a security and that fee-owes the plaintiff nothing. If it were true that the plainliff holds the bond as a security only, the defendant Hoyle would be entitled, upon the admissions of Benniek's answer,, to a set off as to any surplus of the bond after satisfying the plaintiff's demand against Bennick, and it would be necessary to direct an enquiry to ascertain tfeesum due to the plaintiff upon the whole partnership dealings; including his advances of capitalist first, as well as those made for the discharge of debts at the time the bond, was endorsed But it is established by a witness, who was present at it, that in July 1843, Bennick and the plaintiff settled all the- dealings in a way, which made the debts, paid' by the plaintiff in February preceding the debts ©f* Bennick alone, and that upon- that settlement there was, ©ver and above the amount of Hoyle's bond, a balance due the plaintiff of &1327, for which- Bennick then gave-the plaintiff his bond ;.andiathafc statement the witness is sustained by the declarations of Benniek.t ©.others, 4 feat he- and the plaintiff bad settled, and by tfee$»eeeipts and bonds, which passed at that tira© betwsen those two persons and-which they have filed. It must be declared-thereforethat the plaintiff is the
 
 bma $de
 
 assignee of the bond in question for value, and that be bolds it as his own. The Court bad some hesitation at first upan the question, whether the assignment of the bond gave the assignee ih© benefit, also of the security of the deed of trust.
 
 J%
 
 seemed perfectly just, that it should do so, as ill© incident ought to follow the principal. It would doso between the personal and real representatives of a mortgagee in fee, and in case-of an assignment of a bond with a surety and a mortgage as a further security, it is clear the assignee of the bond would, upon the principle of substitution, be entitled io the benefit of the mortgage. So likewise, it would -seem at should be, where there is a© surety,because the assignee
 
 *275
 
 of’ the dpbt would seem to stand in the shoes of the assignor to every purpose; not only as being liable to all equities against him, but as being entitled to all his remedies and securities, unless agreed to the contrary. And, upon investigation, so it is found to have been decided in severa! eases.
 
 Foster
 
 v.
 
 Fox,
 
 4 W. & Serg. 92;
 
 Wheeler
 
 v.
 
 Wheeler, 9
 
 Cowen 34. It would follow, however, upon the same principle, that the plaintiff
 
 would in this
 
 Court be liable to any just demands of the debtor against the assignor, attached to the debt assigned ; and, according to the doctrine as settled in this State, a set-off is of that character when a note or bond overdue is assigned; We should, however, doubt extremely, whether the defendant could, upon that principle, avail liims.elfof this set-off against the plaintiff, unless he could bring home to him precise knowledge, at the time he took the bond, of the subsistence of
 
 the bond of Benniek
 
 held by the defendant. For it is a case of flagrant fraud, contrived for the express purpose of deceiving the world and put into such a shape as of purpose to mislead others upon this point," and, at the same time, intended to enable the deceivers
 
 to
 
 take advantage of their fraud. For although the debt, according to the face of the bond, had been due more than three jdsars, yet, according to the terms of the?deed of trust, it was not due and would not be for six weeks after the assignment; and there can be but little suspicion, that the bond given by Benniek to Hoyle, as alleged, was known
 
 to the
 
 plaintiff or any one else but the parties to
 
 it,
 
 since the very purpose of it, as now stated, required that it should-be kept from the world, lest the fraudulent nature of the debt to Benniek and,of the deed of trust should be discovered and thus avoid that deed. It is under the circumstances much the same, as if Hoyle, knowing that the plaintiff was about, paying his money on the bond, had encouraged him to do so, or had at least stood by without saying any thing, when he saw that the plaintiff was led
 
 *276
 
 by the deed of trust to believe, that the parties did not consider the money- as having fallen due, but that the debt still subsisted. It is not, however, necessary to declare the law upon that point, inasmuch as this defendant has not taken the requisite proof to establish the debt he relies on as a set-off. He has exhibited the bond, purporting to be that of Bennick to himself for $1600, dated February 1st 1840, and due one day after date. But it is not attested, and the defendant Hoyle has not even proved the handwriting of the alleged obligor, much less taken evidence to establish the existence of the bond prior to the transfer of the debt to the plaintiff. Such proof would be indispensable in such a case ; since from the conduct of these parties, as admitted by themselves, it might well be presumed, that the pretended bond would be fabricated after this controversy arose, and that they have failed to prove its prior subsistence, only because they could not. This party, indeed, upon the defect of the proof in this respect being pointed out at the hearing, pressed the Court to open the case for further proof. But that could not be thought of for a moment; since, sueh indulgences are given only in furtherance of right. It would be a disgrace to the administration of justice, if an extraordinary favor were granted, to enable a party to supply a defect in so iniquitous a defence. The Court, therefore, refused the applieation; and it must now be declared, that the defendant, Hoyle, has failed to establish, that the other defendant, Bennick, gave to him the bond for $1600, as alleged in his answer — and as it is admitted in all the answers, that the sale hitherto made under the deed of trust was all a sham, it must be decided that the defendants, Hoyle and Holleman, produce the negroes to. the Clerk of this Court to be sold, and that they or as many of them as may be necessary be sold by the Cleric, after the usual notice, to the highest bidder for ready money, so as to pay to thp plaintiff the sum due upon the said bond
 
 *277
 

 given
 
 by
 
 the defendant
 
 Hoj'fe, and as the defendants do not allege any payment, the sum due thereon is found to be $1609, with interest at the rate ®f & per centum from the 1st day of January 1840, until payment; and it will be ordered, that Hoi lemán join with the Clerk in convey* i'ng the slaves to the purchaser or purchasers. Of course-the defendants must pay all
 
 the easts.
 

 In the course of the cause, Joseph Barringer filed a petition in it, stating that on the 10th. August 1844. the de fendant, Hoyle, conveyed to him two of the slaves included* in the deed of trust, named Ann and Jane, by. way of mortgage to indemnify him against' loss as the surety of Hoyle in a bond for SaOO.^before that time given to on® Henry Rhodes, and praying that they might be discharged from the sequestration, in arder that he-might
 
 sell
 
 them to raise the money for the discharge of the debt, agree&r bly toa power contained in
 
 the mortgage.
 
 An enquiry was directed as to the petitioner’s right, and the master reported, that the debt was
 
 a
 
 just one»
 

 The Court can give no relief upon the petition, a»' against the plaintiff, whose incumbrance is prior and preferable ; and all that can be done for the petitioner is So direct that the negroes, which
 
 are not
 
 mortgaged to Barringer, shall’ be first sold for the satisfaction of the plaintiff, so that if he should be paid before all the
 
 negroes
 
 should be sold, Barringer may take those or that one of the two mortgaged to him,, which may remain after pay*, ang the plaintiff.
 

 Per Curiam.
 

 Decreed accordingly.